JOEANN MCCLANDON,

          Plaintiff,

-vs-                                Case No.  6:08-cv-35-Orl-28GJK

HEATHROW LAND COMPANY LIMITED
PARTNERSHIP, HEATHROW REALTY,
LLC, CALVIN HAY, and ALAN
RUTKOWSKI,

          Defendants.

_____

# ORDER

      This case involves Plaintiff Joeann McClandon's ("McClandon" or "Plaintiff") claim that Defendants violated her rights under the Fair Housing Act.[1]  In her Complaint, Plaintiff alleges that Defendants discriminated against her on the basis of her race by selectively enforcing certain restrictive covenants impeding her rights to own and transfer property.  In preparation for trial, Defendants have filed a Motion in Limine (Doc. 58) seeking to exclude certain of McClandon's exhibits from evidence.  These exhibits include: (1) a letter from attorney Michael G. Murray pertaining to a state court lawsuit between Defendants and Plaintiff's son; and (2) the Probable Cause Determination issued by the Florida Commission on Human Relations ("FCHR") along with miscellaneous related documents attached thereto.  As explained below, the Motion in Limine must be denied.

---

[1] 42 U.S.C. § 3601 *et seq.*

## I. Background[2]

McClandon's claims are related to her ownership of a residential lot in Heathrow Woods, a prestigious subdivision in Seminole County, Florida. In 2001, McClandon's son, Robert Johnson, and his wife, Debra ("the Johnsons"), purchased the lot from Defendant Heathrow Land Company Limited Partnership ("HLC") for $189,000. HLC's Agreement for Sale provided that the Johnsons would complete construction of a single-family residence within twenty-four months from the date of purchase and that failure to do so would require that they pay HLC $1000 for each month that construction was delayed. HLC retained the right to repurchase the property if the Johnsons failed to timely complete the construction. The contract further provided that the Johnsons were required to obtain HLC approval prior to selling to a third party. These provisions were common to all contracts to purchase Heathrow Woods lots from HLC.

The Johnsons did not commence construction of a residence within twenty-four months following their purchase. At some point thereafter, McClandon offered to purchase the lot from the Johnsons for $350,000. In accordance with the Agreement for Sale, the Johnsons sought permission from HLC to sell the lot to McClandon. Defendant Calvin Hay ("Hay"), acting on behalf of HLC, refused approval of the sale. In December 2003, despite having been informed that the proposed sale was not approved, the Johnsons executed a quitclaim deed transferring their interest in the lot to McClandon for the agreed-upon price.

---

[2]The description of events contained in this Order is taken from the parties' filings and from unrefuted statements at oral argument. This description does not constitute the Court's findings of fact.

Neither the Johnsons nor McClandon advised HLC of the sale to McClandon.

By May 2005, no construction had commenced, and HLC sent a notice to the Johnsons of its decision to repurchase the lot. The Johnsons responded by advising HLC that they no longer owned the lot and that they had sold it to McClandon. To verify her ownership, McClandon provided HLC with a copy of the quitclaim deed from the Johnsons and a copy of her cancelled check. HLC then filed suit in state court seeking to enforce the repurchase provision of its Agreement for Sale with the Johnsons. McClandon was named as a defendant in the third and final count of the complaint solely for the purpose of quieting title.[3] At the same time, HLC filed a lis pendens in the official records of Seminole County.

In May 2006, while litigation was pending in state court, McClandon entered into a contract to sell the lot for $950,000 to Robert Dello Russo and his wife ("the Dello Russos"). In searching the title, the Dello Russos discovered the lis pendens filed by HLC. McClandon and the Dello Russos agreed to extend their closing date in order to clear the lis pendens, but after meeting with Defendant Hay, the Dello Russos elected not to proceed with the purchase.

Upon frustration of her efforts to sell the lot to the Dello Russos, McClandon brought this lawsuit against HLC, Hay, and Heathrow Realty, LLC. McClandon, who is African-American, claims that Defendants unreasonably withheld consent to the Johnson-McClandon sale. She also alleges that Defendants had never enforced the twenty-four-month construction requirement and repurchase provision against Caucasian owners.

_____

[3]Plaintiff made this point at oral argument and it was not refuted by Defendants.

McClandon additionally claims that Defendants' interference with her agreement to sell the lot to the Dello Russos constituted race discrimination.

## II.  Discussion

### A.  The Letter

In the state court litigation, HLC was represented by attorney Michael G. Murphy ("Murphy").  While that litigation was pending, Murphy sent the following letter to W. Marvin Hardy, attorney for the Johnsons and McClandon:

> *Re. Heathrow Land Company vs. Johnson and McClandon*
> **Offer in Compromise and Settlement**
>
> Dear Marvin:
>
> Please consider this an offer in compromise and settlement that would not be admissible in any subsequent proceeding.
>
> Heathrow understands that there is a party interested in buying the Johnson Lot, but of course that buyer will not execute the contract for sale given the lawsuit and lis pendens.  Heathrow's interest has always been to have the Lot improved at the earliest possible time.  To that end, Heathrow would be willing to settle its dispute with the Johnson's [sic] to allow a sale to a third party. Heathrow would also be willing to share some of the profits from the sale with the Johnsons.  Please convey the principle of this offer to your clients, and let me know their response.
>
> Sincerely,
>
> Greenberg Traurig, P.A.
>
> Michael G. Murphy, Esquire

Defendants argue that the letter constitutes an offer of compromise and thus should be excluded from evidence pursuant to Federal Rule of Evidence 408.  McClandon responds, however, that the letter does not constitute compromise evidence within the meaning of Rule

408 and that even if it does, it is still admissible because it is not being offered for any of the purposes requiring exclusion under the Rule. The Court agrees with the first of these arguments and need not reach the second.

Rule 408 provides in pertinent part:

Evidence of the following is not admissible on behalf of any party, when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction:

> (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or statements made in compromise negotiations regarding the claim, except when offered in a criminal case and the negotiations related to a claim by a public office or agency in the exercise of regulatory, investigative, or enforcement authority.

Fed. R. Evid. 408(a).[4] The Rule excludes from evidence offers to compromise a claim that are sought to be used for the purpose of establishing liability on that claim. See Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co., 792 F.2d 1036, 1042 (11th Cir. 1986) ("Well established case law and the Federal Rules of Evidence prohibit the introduction of settlements or settlement negotiations into evidence to prove liability." (citing Rule 408 and

---

[4]Subdivision (b) of the Rule provides:

(b) Permitted uses.—This rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a). Examples of permissible purposes include proving a witness's bias or prejudice; negating a contention of undue delay; and proving an effort to obstruct a criminal investigation or prosecution.

Thus, evidence falling within the rule is not barred for all purposes but only those enumerated in subdivision (a).

<u>Dallis v. Aetna Life Ins. Co.</u>, 768 F.2d 1303 (11th Cir. 1985))).  The rule is the embodiment of the well-established and valued policy encouraging settlement of claims and defenses. The policy "creates an environment where the parties can discuss a claim freely without fear that their statements will be used against them should negotiations fail." <u>Saadi v. Maroun</u>, No. 8:07-cv-1976-T-24MAP, 2009 WL 3736121, at *3 (M.D. Fla. Nov. 4, 2009).

McClandon argues that the letter is not an offer of compromise at all—even as to the Johnsons.  Although the Court disagrees with the full extent of this argument, the Court does agree that the letter does not constitute "compromise evidence" within the meaning of Rule 408 for the purposes of this case.  Although its terms are vague, the letter does qualify as a "statement made in compromise negotiations regarding" HLC's dispute with the Johnsons in the state court action.  HLC was willing to settle its claims against the Johnsons in return for the Johnsons' agreement to share in the proceeds of a sale to a third party.  Had the letter been offered by the Johnsons in the state court proceeding to establish the invalidity of HLC's claim, the letter would be subject to exclusion as compromise evidence.[5]  This does not, however, answer the question of whether the letter constitutes Rule 408 compromise evidence in this lawsuit brought by McClandon.

As several courts have emphasized, "[b]y its terms, Rule 408 precludes the admission of evidence concerning an offer to compromise 'a claim' for the purpose of proving (or disproving) the fact or amount of 'the claim.'" <u>Armstrong v. HRB Royalty, Inc.</u>, 392 F. Supp.

---

[5]Section 90.408, Florida Statutes, provides: "Compromise and offers to compromise. Evidence of an offer to compromise a claim which was disputed as to validity or amount, as well as any relevant conduct or statemenst made in negotiations concerning a compromise, is inadmissible to  prove liability or absence of liability for the claim or its value."

2d 1302, 1304 (S.D. Ala. 2005). "Thus, 'Rule 408 excludes evidence of settlement offers only if such evidence is offered to prove liability for or invalidity [or amount] *of the claim under negotiation.*'" Id. (quoting Vulcan Hart Corp. v. NLRB, 718 F.2d 269, 277 (8th Cir. 1983)) (emphasis and alteration in original). The Armstrong court concluded, and I agree, "that Rule 408 unambiguously requires that the claim as to which a settlement offer was made and the claim at issue in the litigation in which the offer is proffered as evidence must be the same claim" in order for the Rule to apply and call for the evidence's exclusion. Id. at 1304-05; accord Towerridge, Inc. v. T.A.O., Inc., 111 F.3d 758, 770 (10th Cir. 1997) ("Rule 408 does not require the exclusion of evidence regarding the settlement of a claim different from the one litigated, though admission of such evidence may nonetheless implicate the same concerns of prejudice and deterrence of settlements which underlie Rule 408." (citations omitted)); Broadcort Capital Corp. v. Summa Med. Corp., 972 F.2d 1183, 1194 (10th Cir. 1992) (finding that Rule 408 did not apply where "the evidence related to an entirely different claim"). But see C & E Servs., Inc. v. Ashland Inc., 539 F. Supp. 2d 316, 319-20 (D.D.C. 2008) (reaching contrary conclusion and collecting authorities).

The letter at issue does not involve McClandon's race discrimination claim. The letter was written during HLC's suit against the Johnsons to enforce the repurchase provision of the Agreement for Sale, and it specifically states that HLC "would be willing to settle its dispute *with the Johnson's* [sic] to allow a sale to a third party" and that HLC would be willing to share profits of the sale with the Johnsons. Thus, even construing the letter as an offer or as a part of negotiations intending to lead to settlement with the Johnsons, it does not involve the Fair Housing Act claim that is now before this Court. The letter did not pertain

to the dispute in this action, which had not yet arisen; instead, it was regarding a pending suit in state court in which HLC had sued McClandon only to quiet title. At the time the letter was sent, McClandon had not yet filed her action for race discrimination, and the letter was not directed to the claims she now pursues in this Court for alleged violations of the Fair Housing Act.

In sum, the letter is not evidence of compromise that is subject to exclusion under Rule 408. Thus, Defendants' Motion in Limine to exclude the letter from evidence on this ground must be denied.

### B. FCHR Probable Cause Determination

Defendants' Motion in Limine also seeks exclusion of the FCHR Probable Cause Determination and related investigative documents on the ground that admission would violate Federal Rule of Evidence 403, which provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Defendants claim that the documents require exclusion because they possess little or no probative value and are likely to confuse the jury. In support of this conclusion, Defendants assert that the FCHR Determination "is factually deficient" and therefore untrustworthy because the investigators failed to interview some of those who made decisions on behalf of Defendants, including HLC employees George Apostolicas and R. Paul Roecker. Defendants contend that the Determination "shows clear deficiencies, bias, and animus toward the Defendants by the [FCHR] investigator, rendering the Determination

untrustworthy and inadmissible."

Defendants' Motion fails to mention Federal Rule of Evidence 803(8)(C),[6] which deals specifically with Government investigatory reports. In short, the rule provides that trustworthy investigatory reports of Government agencies should not be excluded from evidence in civil cases. However, reports of Government agencies are subject to scrutiny by the court, and those lacking trustworthiness should be excluded from evidence. Also, under Federal Rule of Evidence 403, when the probative value of such reports is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury," the report should be excluded from evidence. Although an agency's probable cause determination regarding a charge of race discrimination ordinarily has probative value and "is ordinarily admissible," the ultimate decision as to admissibility, whether based on Rule 403 or Rule 803(8)(C), is "best left to the sound discretion of the district court." Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1288 (11th Cir. 2008); see also Hines v. Brandon Steel Decks, Inc., 886 F.2d 299, 302 (11th Cir. 1989) ("[T]he decision to exclude certain evidence will not be reversed absent a clear showing of abuse of

---

[6] Rule 803(8)(C) provides:
> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
> . . . .
> (8) Public records and reports.—Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

discretion.").

The FCHR Determination and related documents in this case contain the trained investigator's report and findings of fact gleaned from multiple witness interviews, review of documents, and other information gained in the course of the investigation. It appears from the record that Defendants were represented throughout the investigation. Counsel for Defendants responded to the FCHR's Notice of Filing of Complaint of Discrimination and submitted a Position Statement on behalf of Defendants. McClandon argues—and Defendants do not deny—that "Defendants fully participated in the FCHR investigation and set forth all of the facts and fact witnesses [they] considered to be material to the FCHR investigation." Defendants make it clear that they disagree with the Determination, but they do not cite to any evidence they recommended to the investigator that the investigator failed to consider. Defendants have failed to establish a reasonable basis upon which to conclude that the Determination is untrustworthy or that its probative value is outweighed by undue prejudice or the danger of confusion.

Furthermore, Defendants' argument that admission of the Determination may result in undue prejudice or risk of confusion is tenuous for two reasons. First, the FCHR investigator who authored the Determination will be called as a witness by McClandon. She will be subject to cross-examination by Defendants' lawyers, and they will have an opportunity to challenge the fairness of her findings. Second, the Court will instruct the jury as to how it should consider the Determination in deciding the issues in this case. McClandon has proposed a jury instruction on this point to which Defendants have not objected. That instruction explains that the Determination is part of the non-adversary

administrative process designed to put the accused party on notice of the FCHR's findings. The proposed instruction specifically states that the Determination "is not an adjudication of rights and liabilities."

McClandon's intended purposes for offering the FCHR's findings are permitted by Rule 803(8)(C) and are not violative of Rule 403. Thus, Defendants' Motion in Limine to exclude the FCHR's findings and determinations must be denied.

### III. Conclusion

Defendants having failed to establish a basis for exclusion of either of the challenged exhibits offered in evidence by Plaintiff, Defendants' Motion in Limine (Doc. 58) is **DENIED**. As is most often the case, this ruling is based on information provided by counsel before trial. Should the evidence presented at trial differ, the question of admissibility of the challenged evidence may, upon motion, be revisited.

**DONE** and **ORDERED** in Orlando, Florida this 22nd day of January, 2010.

Copies furnished to:
Counsel of Record

JOHN ANTOON II
United States District Judge